United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD TODD THOMAS,<br>    Plaintiff,<br>    v.<br>JAMES S. BOSTWICK,<br>    Defendant. | Case No. 13-cv-02544-JCS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**Dkt. Nos. 56, 57** |

## I.   INTRODUCTION

Plaintiff Richard Todd Thomas filed this action against Defendant James S. Bostwick under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Mr. Bostwick was trustee of certain profit sharing plans (the "Plans") set up by Mr. Thomas's former employer, James S. Bostwick, Professional Corporation (the "Corporation"). Mr. Thomas was terminated by the Corporation in 2005 due to Mr. Thomas's embezzlement of nearly twenty million dollars. After liquidation of the Plans in 2008 and 2009, Mr. Bostwick did not distribute any proceeds to Mr. Thomas. Mr. Bostwick instead transferred Mr. Thomas's share of the proceeds to the Corporation, which applied the proceeds against Mr. Thomas's substantial judgment debts. Mr. Thomas claims that Mr. Bostwick breached his fiduciary duties by contravening the Plan's anti-alienation provision. In response, Mr. Bostwick argues that ERISA does not permit Mr. Thomas to recover from Mr. Bostwick, and that Mr. Bostwick breached no duty because transferring the proceeds to the Corporation was permissible.

The parties have stipulated to the material facts of the case, waived their rights to present live testimony, and agreed to resolve the case via cross motions for judgment, which both have

1  since filed.[1]  The Court held a hearing on these motions on August 22, 2014, at 9:30 a.m.  For the
2  reasons stated below, Plaintiff's Motion for Judgment is GRANTED in part, and Defendant's
3  Motion is DENIED.[2]

## II.   BACKGROUND[3]

Between 1996 and 2005, Mr. Thomas was employed at the Corporation as an accountant. Joint Statement of Undisputed Facts ("JS") (Dkt. 51) ¶ 1.  During that period the Corporation made contributions to the Plans for Mr. Thomas's benefit.  Answer (Dkt. 30) ¶ 6; *see* JS ¶ 10.  The Corporation terminated Mr. Thomas in 2005, and later obtained a $19,837,866 civil judgment against Mr. Thomas based on embezzlement.  JS ¶ 3.  There is also a criminal restitution order against Mr. Thomas in favor of the Corporation, in the amount of $8,777,725.18.  JS ¶ 4.

The Corporation terminated the Plans in 2008 and 2009.  JS ¶ 9.  Under the terms of the Plans, this voluntary termination required "Distributable Benefits" to be held in trust until distributed to participants in the Plans.  JS Ex. 2 ¶ 3.8.4.  The Plans also provided that participants' and beneficiaries' rights under the Plans were inalienable, and that no funds would revert to the Corporation:

> **3.11.1  No Reversion to Employer.**  Except as specifically provided in the Plan, no part of the corpus or income of the Trust shall revert to the Employer or be used for, or diverted to purposes other than for the exclusive benefit of Participants and their Beneficiaries.
>
> . . .
>
> **3.11.7  Inalienability.**  The right of any Participant or his Beneficiary in any distribution hereunder or to any separate Account

---

[1] The Court construes the present motions as motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Because the parties have stipulated to the material facts of the case, "there is no genuine dispute as to any material fact" and summary judgment is appropriate.  *See* Fed. R. Civ. P. 56(a).  Alternatively, to the extent that any facts are disputed, the parties have waived their rights to live testimony, and the Court resolves the case as a trial on the papers.  *See* Stipulation and Order (Dkt. 53); *Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1038 n.6 (9th Cir. 2000).  Under that alternative basis for judgment, in accordance with Rule 52, the "Background" section of this Order constitutes the Court's findings of fact, and the "Analysis" and "Conclusion" sections constitute the Court's conclusions of law.  *See* Fed. R. Civ. P. 52(a)(1).

[2] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

[3] The parties have stipulated to the facts recited below.

> shall not be subject to alienation, assignment or transfer, voluntarily or involuntarily, by operation of law or otherwise, except as may be expressly permitted herein. No participant shall assign, transfer, or dispose of such right nor shall any such right be subjected to attachment, execution, garnishment, sequestration, or other legal, equitable, or other process.

JS Ex. 2 at 91 (in relevant part). If a participant's employment is terminated at or later than his or her normal retirement age, or if the Plans are terminated, the participant's interest in the Plans is fully vested and nonforfeitable. JS Ex. 2 at 31 (¶¶ 2.4.2(a), (b), (e)). Under other circumstances, including termination of employment before normal retirement age, a participant's interest vests at a rate of 20% per year, starting after three years of service, and the vested portion is nonforfeitable. JS Ex. 1 at 17 (¶ E.3); JS Ex. 2 at 31−32 (¶¶ 2.4.2(f), (g)).

Mr. Bostwick, who was both the trustee of the Plans and president of the Corporation, asked Mr. Thomas to consent to the distribution of Mr. Thomas's share of the proceeds to the Corporation, but Mr. Thomas declined to so consent. JS ¶¶ 8, 19. The Corporation nevertheless received from the Plan three cashier's checks totaling $21,631.79, which comprised the profit sharing benefits deposited to Mr. Thomas's individual accounts within the Plans. JS ¶¶ 10–11. The Corporation deposited these checks on January 26, 2010. JS ¶ 11. The Court is satisfied, based on Mr. Bostwick's dual roles and his personal request that Mr. Thomas consent, that Mr. Bostwick was at least aware of the transfer and capable of preventing it, if not actively involved.

Mr. Thomas filed for bankruptcy in the U.S. Bankruptcy Court for the Northern District of California on May 24, 2012. JS ¶¶ 17, 21. At some point after filing for bankruptcy, he learned that the Corporation had received the funds from his Plan accounts and credited them against his debts. JS ¶ 17 & Ex. 5 at 2 (Bankruptcy Court order noting the credit). The issues in this case first arose in an adversary proceeding as part of Mr. Thomas's bankruptcy adjudication, but the bankruptcy court ultimately declined to resolve them in an order issued May 22, 2013. JS ¶ 21 & Ex. 5.

Mr. Thomas filed his Complaint in this Court two weeks later. Dkt. 1. Mr. Bostwick moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 19. The Court denied that motion, holding that Mr. Thomas's Complaint adequately stated a claim under

ERISA. *Thomas v. Bostwick*, No. 13-cv-02544-JC, 2013 WL 5289952 (N.D. Cal. Sept. 19, 2013) (Dkt. 24). The Court has also previously quashed a Notice of Lien filed by the Corporation. Dkt. 83. The parties have now filed cross motions for judgment and stipulated that the action (except for Mr. Thomas's request for attorneys' fees) be resolved on those motions. Dkts. 53, 56, 57.

## III.   ANALYSIS

### A.   Legal Standard Under Rule 56 of the Federal Rules of Civil Procedure

Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id*. "[T]he inquiry involved in a ruling on a motion for summary judgment . . . implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252 (1986).

As discussed in footnote 1, *supra*, the Court determines that summary judgment is appropriate because the parties have stipulated to the material facts, *see generally* JS. To the extent that any issues of fact remain, the Court may alternatively resolve the case as a bench trial on the written record. *See* Stipulation and Order (Dkt. 53); *Chevron*, 224 F.3d at 1038 n.6.

### B.   Statutory Standing and Appropriate Relief

Mr. Thomas brings this claim under sections 502(a)(2) and 409 of ERISA. Pl.'s Reply (Dkt. 64) at 2 (citing 29 U.S.C. §§ 1132(a)(2); 1109). Although Mr. Thomas's Complaint broadly invokes section 502 as a whole, his papers presently before the Court do not pursue relief under the other subparts of that section.[4] Mr. Thomas's Complaint is styled as an "action for money

---

[4] A number of cases that Mr. Bostwick cites—at least with respect to the purposes for which Mr. Bostwick cites them—relate to other subparts of section 502(a) and are therefore inapplicable to

4

damages," Compl. ¶ 1, but it also seeks "such other and further relief, at law or in equity, to which Plaintiff may be justly entitled, *id.* ¶ IV.4. In his Reply, Mr. Thomas requests either (1) that the Court order Mr. Bostwick to deposit funds into the Plans (which Mr. Thomas acknowledges may not be feasible in light of the Plans' termination), or (2) a money judgment. Pl.'s Reply at 3–4.

Section 502(a)(2) permits a participant or beneficiary of an ERISA plan to bring a civil action "for appropriate relief" under section 409. 29 U.S.C. § 1132(a)(2). Section 409 provides that a plan fiduciary "shall be personally liable to make good to such plan any losses to the plan resulting from" a breach of his or her fiduciary duties. *Id.* § 1109. The statute also authorizes "such other equitable or remedial relief as the court may deem appropriate."[5] *Id.* Courts have held that, in the case of a defined contribution plan, a participant may sue under section 502(a)(2) for losses to his or her individual account. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 255–56 (2008).

In *Massachusetts Mutual Life Insurance Co. v. Russell*, the Supreme Court held that section 409 authorized only "remedies that would protect the entire plan, rather than . . . the rights

---

Mr. Thomas's claims. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (discussing section 502(a)(1)(B)); *Vaughn v. Bay Envtl. Mgmt., Inc.*, 544 F.3d 1008, 1014 (9th Cir. 2008) (same), *amended and superseded by* 567 F.3d 1021 (2009); *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 301 (3d Cir. 2007) (same); *Everhart v. Allmerica Fin. Life Ins. Co.*, 275 F.3d 751, 754 (9th Cir. 2001) (same), *overruled by Cyr v. Reliance Standard Life Ins. Co*, 642 F.3d 1202 (9th Cir. 2011) (en banc).
[5] This provision, authorizing "equitable *or remedial* relief," plainly extends beyond *only* equitable relief. 29 U.S.C. § 1109 (emphasis added). Mr. Bostwick's Reply relies heavily on *Gabriel v. Alaska Elec. Pension Fund*, 755 F.3d 647 (9th Cir. 2014), but that case relates to equitable remedies available under section 502(a)(3). *See Gabriel*, 755 F.3d at 655 ("Under [section 502(a)(3)], a plaintiff must prove . . . that the relief sought is 'appropriate *equitable* relief,' 29 U.S.C. § 1132(a)(3)(B)." (emphasis added)); *id.* at 655−60 (reviewing precedent interpreting the scope of "appropriate equitable relief"). *Gabriel* cites section 409 as setting forth a trustee's fiduciary duty, but does not analyze that section as a source of remedies. *See id.* at 653−54. *Gabriel* therefore does not govern Mr. Thomas's claim under sections 502(a)(2) and 409, which provide for "appropriate relief" and appropriate "equitable *or remedial* relief," respectively. *See* 29 U.S.C. §§ 1132(a)(2), 1109 (emphasis added).
  Mr. Bostwick's reliance on the unclean hands doctrine discussed in *Keystone Driller Co. v. Gen. Excavator Co.* is similarly misplaced. *See* Def.'s Suppl. Br. (Dkt. 79) at 2 (citing 290 U.S. 240, 244−45 (1933)). That case dealt with the limits of equitable remedies; it does not govern statutory remedies that extend beyond equity. *See* 290 U.S. at 241 ("The question presented is whether the Circuit Court of Appeals rightly applied the maxim, He who comes *into equity* must come with clean hands." (emphasis added)). If *Keystone Driller* applied as broadly as Mr. Bostwick contends, it would preclude the Supreme Court's holding in *Guidry v. Sheet Metal Workers' Nat'l Pension Fund*, 493 U.S. 365 (1990), discussed further below.

5

of an individual beneficiary." 473 U.S. 134, 141–44 (1985). The Court revisited that decision in *LaRue* to address whether the same rules apply to defined contribution plans as apply to defined benefit plans. 552 U.S. at 255–56. Defined *contribution* plans allocate funds to individual accounts, and each beneficiary is entitled only to the funds in his or her account. *See id.* In contrast, defined *benefit* plans pay each beneficiary a fixed amount that may be based on factors other than individual contributions, such as (in *Russell*) the size of an employee's salary. *See id.* at 255. Citing the purposes of ERISA, other sections of the statute, and the proliferation of defined contribution plans, the Court held in *LaRue* that, for claims related to defined contribution plans, sections 502(a)(2) and 409 "authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id.* at 256.

Although *LaRue* itself does not clearly speak to how such recovery should be awarded, courts interpreting that decision have suggested that a participant or beneficiary may seek to recover for himself or herself, rather than only for the plan. In *Harris v. Amgen, Inc.*, the Ninth Circuit held that "a defined contribution plan plaintiff alleging breach of fiduciary duty claims under Section 502(a)(2) can gain redress by 'su[ing] for an adjustment in the benefits designed *to give him what he would have received*'" absent the breach.[6] 573 F.3d 728, 735 (9th Cir. 2009) (quoting *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804–05 (7th Cir. 2007)) (alteration in original, emphasis added). Similarly, one decision from this district has described *LaRue* as "recogniz[ing] an exception" to the rule that "any recovery must generally go to a plan, as opposed to participants or beneficiaries." *Gallagher v. Life Ins. Co. of N. Am.*, C 07-05224 SBA, 2008 WL 753733, at *4 n.7 (N.D. Cal. Mar. 19, 2008).

Section 409 establishes fiduciary liability to "make good to *such plan* any losses," but it also provides for "such other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109 (emphasis added). Although the Supreme Court in *Russell* interpreted this clause as

---

[6] Mr. Bostwick's Supplemental Brief quotes from a different portion of *Harris* that deals with the requirements for equitable restitution from a non-fiduciary under section 502(a)(3) of ERISA. Def.'s Suppl. Br. at 3. As discussed above, the relief available against a fiduciary under section 502(a)(2) extends beyond the equitable relief authorized by section 502(a)(3)—there is no requirement that Mr. Bostwick personally received the improperly transferred funds.

authorizing recovery only to the plan, *see* 473 U.S. at 141, the subsequent decision in *LaRue* "establishes that precedent from cases [like *Russell*] involving defined benefit plans is not automatically applicable in cases involving defined contribution plans." *Vaughn v. Bay Entvl. Mgmt., Inc.*, 567 F.3d 1021, 1027 (9th Cir. 2008) (citing *LaRue*, 128 S. Ct. at 1025). Tracing benefits to an individual is far more straightforward in the context of a defined contribution plan, and the distinction between restoring such benefits to the individual versus the plan is less significant than in a case involving a defined benefit plan. *Russell* is also distinguishable because Mr. Thomas seeks to recover the *benefits* to which he was entitled, as opposed to "extracontractual damages." *Cf. Russell*, 473 U.S. at 144; *see also Harzewski*, 489 F.3d at 799. Unlike the plaintiff in *Russell*, Mr. Thomas alleges that he did *not* "receive[] all of the benefits to which []he was contractually entitled," and he seeks to recover those benefits, as opposed to consequential damages. *Cf. LaRue*, 552 U.S. at 254 (summarizing *Russell*).

The Seventh Circuit held in *Harzewski* that plaintiffs suing fiduciaries[7] under sections 502(a)(2) and 409 may recover if "claiming an amount of money to which they are entitled by the plan documents over what they received" when benefits were disbursed. *Harzewski*, 489 F.3d at 804. Such plaintiffs cannot sue for "extracontractual damages," but "the statute authorizes suits for benefits," which in a defined contribution plan consist of "whatever is in the retirement account when the employee retires or *whatever would have been there had the plan honored the employee's entitlement*." *Id.* at 804–05 (citations omitted). The Ninth Circuit has described *Harzewski* with approval as "[t]he leading case" on statutory standing under these provisions of ERISA. *Vaughn*, 567 F.3d at 1027. The Court finds the Seventh Circuit's reasoning persuasive and applicable to the issue at hand, and concludes that, in appropriate circumstances, a plaintiff may recover benefits personally under sections 502(a)(2) and 409 for breach of fiduciary duty with respect to a defined contribution plan.

In this case, the Plans at issue were defined contribution plans. *See* JS ¶ 10 (discussing

---

[7] Contrary to defense counsel's characterization at oral argument, *Harzewski*, like the present case, was an action by plan participants against fiduciaries, not an action against a plan. *See* 489 F.3d at 800, 803.

"deposits by the Corporation in individual accounts established for Thomas"). Mr. Thomas, as a participant and/or beneficiary, may therefore bring this action against Mr. Bostwick, as a fiduciary, for wrongfully depleting Mr. Thomas's accounts. *See* 29 U.S.C. § 1132(a)(2); *LaRue*, 552 U.S. at 256. Under the circumstances of this case—specifically, that the Plans have been terminated[8] and funds have been distributed, *see* JS ¶ 9—the Court holds that if a breach occurred, an award of benefits to Mr. Thomas is appropriate as "other . . . remedial relief" authorized by section 409. *See* 29 U.S.C. § 1109. To hold otherwise could allow delinquent ERISA fiduciaries to escape personal liability by terminating the plans that they oversee, undermining section 409's purpose of holding fiduciaries liable for misconduct.

### C. Breach of Fiduciary Duty Under Section 409

Under section 409, a fiduciary of an ERISA plan may be personally liable for a breach of fiduciary duties, which includes wrongful taking or transfer of plan assets. *Kim v. Fujikawa*, 871 F.2d 1427, 1431 (9th Cir. 1989) (holding an ERISA fiduciary liable for "the entire cost of the prohibited transaction"). Even where a plan grants the administrator discretion, courts must review for abuse of that discretion, "informed by the nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006). Here, Mr. Bostwick's dual roles with the Plans and the Corporation raise a possible conflict of interest that informs the Court's review of his conduct. *See id.*; JS ¶ 8 ("Bostwick, who was the President of the Corporation, was the trustee of the [Plans].").

#### 1. Improper Forfeiture of Benefits

As an initial matter, Mr. Bostwick suggests that Mr. Thomas forfeited his right to Plan benefits by embezzling money from the Corporation.[9] Def.'s Mot. (Dkt. 56) at 5 (citing

---

[8] There is no dispute that the Plans have terminated. Whether certain trusts related to the Plans also terminated is less clear. As the Court acknowledged in its previous Order (Dkt. 24), documents submitted by the parties indicate that the trusts continue until benefits are distributed to all participants. However, both parties have explicitly stipulated that the trusts no longer exist. JS ¶ 9 ("The Trusts are no longer in existence."). The Court is therefore satisfied that, as Mr. Thomas acknowledges in his Reply, a remedy of returning funds to the Plans is not feasible.

[9] The fact that Mr. Thomas's benefits were credited against his debts strongly suggests that he was never found ineligible. *See* JS Ex. 5 at 2 (Bankruptcy Court order noting that the Corporation

*MacIntyre v. Retirement Bd.*, 42 Cal. App. 2d 734 (1941)); Def.'s Opp'n (Dkt. 60) at 2. If Mr. Thomas had no right to benefits, it would follow that Mr. Bostwick had no fiduciary duty to disburse benefits to Mr. Thomas upon termination of the Plans. This theory fails to address section 203(a) of ERISA, which requires that, subject to certain conditions, "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable." 29 U.S.C. § 1053(a); *see also Guidry v. Sheet Metal Workers Nat'l Pension Fund*, 493 U.S. 365, 369 & n.7 (1990) (discussing "decisions holding that pension benefits were not forfeitable even upon a showing of the covered employee's misconduct").

Here, as required by ERISA, the Plans provided that participants' interests in their accounts were either fully vested and nonforfeitable, or partially vested subject to a vesting schedule. *See* JS Ex. 1 at 17; JS Ex. 2 at 31−32. Given that the Corporation employed Mr. Bostwick for over eight years before his termination, *see* JS ¶¶ 1−2, Mr. Thomas's benefits in the Plans had fully vested even if the vesting schedule applied, *see* JS Ex. 1 at 17. Mr. Thomas's interest in the Plans was therefore nonforfeitable under section 203(a) of ERISA, 29 U.S.C. § 1053(a). ERISA's anti-forfeiture provision protects even employees who have embezzled from their employers. *See Guidry*, 493 U.S. at 369 n.7 (citing lower court decisions). Mr. Bostwick has not identified any provision of the Plans or ERISA that would create an exception allowing forfeiture of Mr. Thomas's benefits.

The case that Mr. Bostwick cites as support for his forfeiture argument—*MacIntyre*, 42 Cal. App. 2d 734—predates ERISA's enactment by decades. Further, ERISA preempts state law regarding forfeiture of retirement benefits. *See Clark v. Lauren Young Tire Ctr. Profit Sharing Trust*, 816 F.2d 480, 481 (9th Cir. 1987); *Lojek v. Thomas*, 716 F.2d 675, 678 (9th Cir. 1983). Thus, because ERISA prohibits forfeiture of vested benefits, the Court concludes that any forfeiture of Mr. Thomas's benefits was improper, and proceeds to consider whether Mr.

---

"gives credit for the $21,641.79 trust fund paid to it from [Mr. Thomas's] account"). If Mr. Thomas had been judged ineligible for benefits, there would be no reason to grant him credit. Mr. Bostwick nevertheless argues that the Corporation chose to give Mr. Thomas credit beyond what he was entitled to, so the Court considers below whether revocation of Mr. Thomas's benefits would have been permissible.

1  Bostwick, the Plans, and the Corporation could properly alienate the benefits in satisfaction of Mr.
2  Thomas's judgment debts.

### 2. Improper Alienation of Benefits

Mr. Thomas alleges that Mr. Bostwick abused his discretion and breached his fiduciary duty by disregarding the Plans' anti-alienation requirements.[10] Such requirements are mandated by ERISA section 206(d)(1), which states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). This safeguard permits only limited exceptions:

> Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), *even if that decision prevents others from securing relief for the wrongs done them*. If exceptions to this policy are to be made, it is for Congress to undertake that task.

*Guidry*, 493 U.S. at 376 (emphasis added); *United States v. Novak*, 476 F.3d 1041, 1045–46 (9th Cir. 2007) (en banc) (quoting *Guidry*). Mr. Bostwick contends that the restitution order against Mr. Thomas falls within an exception to the anti-alienation requirement. For the reasons stated below, the Court disagrees.

In *Guidry*, the Supreme Court considered whether a district court properly imposed a constructive trust to garnish the pension benefits of a former union executive who had pleaded guilty to embezzling funds from his union. 493 U.S. at 367. The former executive filed a complaint while incarcerated alleging that the pension plans had wrongfully refused to pay his

---

[10] Mr. Bostwick's Reply contends that a claim for wrongful alienation can only be brought against the Plan, quoting *United States v. Kalani*: "The terms 'alienation' and 'assignment' are meant only to cover those arrangements that generate a right enforceable against a plan." Def.'s Reply at 2 (quoting *Kalani*, No. S3 98 CR1238-06(SAS), 2003 WL 21222546, at *1 (S.D.N.Y. 2003)). But that quotation, originally from the Tenth Circuit's opinion after remand from the Supreme Court in *Guidry*, 39 F.3d 1078, 1082−83 (10th Cir. 2003) (en banc), merely discusses regulations that *define* an alienation as either an "arrangement providing for the payment to the employer of plan benefits which otherwise would be due the participant" or "whereby a party *acquires from a participant or beneficiary* a right or interest enforceable against the plan." 26 C.F.R. § 1.401(a)-13(c)(1) (emphasis added). The quoted passage pertains to what sort of arrangements fall within the latter prong of the regulation, not to the appropriate parties in a lawsuit. Under that regulation, the transfer at issue here was an alienation because it paid benefits to the Corporation that were otherwise due to Mr. Thomas. Neither the regulation nor *Kalani* bars a claim against Mr. Bostwick for breaching fiduciary duty by violating the anti-alienation provision.

benefits. *Id.* at 368. Looking to section 206(d)(1), "applicable administrative regulations, . . . relevant legislative history, and . . . the views of other federal courts," the Court held garnishment—including through a constructive trust—to be prohibited "unless some exception to the general statutory ban is applicable." *Id.* at 371–72. One consideration that the Court found relevant to its conclusion that no exception applied was that the former executive "was convicted of stealing money only from the Union," not from the pension funds. *Id.* at 373. The Court declined to "eviscerate the protections of § 206(d)" by allowing other statutes or equitable considerations to give rise to a general exception for restitution. *Id.* at 375–76.[11] Despite anticipating "a natural distaste for the result," the Court left to Congress the decision of whether to create exceptions to the anti-alienation requirement, and reversed the imposition of a constructive trust. *Id.* at 376–77. Following *Guidry*, the Supreme Court has "declined to recognize any exceptions to ERISA's antialienation provisions" absent clear statutory authorization. *See Patterson v. Shumate*, 504 U.S. 753, 764 (1992).

Mr. Bostwick argues that by enacting the Mandatory Victims Restitution Act ("MVRA," Pub. L. No. 104–132, 110 Stat. 1227) Congress answered the *Guidry* Court's invitation to enhance victims' ability to recover restitution from criminals' ERISA benefits. *See* Def.'s Reply (Dkt. 62) at 3. This is true, but only to a point. The MVRA provides that restitution orders may be enforced in the same manner as fines, 18 U.S.C. §§ 3663A(d), 3664(m)(1)(A)(i), and that:

> The United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. Notwithstanding any other Federal law (including section 207 of the Social Security Act), a judgment imposing a fine may be enforced against all property or rights to property of the person fined [subject to certain narrow exceptions].

18 U.S.C. § 3613(a). Based on thorough analysis of the relationship between the MVRA and ERISA, an en banc panel of the Ninth Circuit concluded that the MVRA's "[n]otwithstanding any

---

[11] The Supreme Court's decision in *Guidry* resolved a circuit split as to whether ERISA's antialienation provision permits an exception for relief from criminal misconduct. *Id.* at 371 & n.9. In doing so, it abrogated older cases from lower courts that had allowed such an exception, including *St. Paul Fire & Marine Ins. Co. v. Cox*, 752 F.2d 550 (11th Cir. 1985), a case that Mr. Bostwick cites in support of his present motion. *See Guidry*, 493 U.S. at 371 n.9; Def.'s Mot. at 6.

11

other Federal law" clause creates an exception to ERISA's anti-alienation provision. *Novak*, 476 F.3d at 1046–58 (9th Cir. 2007).

That exception does not, however, apply to any and all restitution orders. The relevant portion of the MVRA discusses how "*[t]he United States* may enforce a judgment," 18 U.S.C. § 3613(a) (emphasis added), and the Ninth Circuit has construed it as "address[ing] *the government's* right judicially to enforce restitution orders" subject to procedural statutes regarding "the steps *the government* must take to seize property," *Novak*, 476 F.3d at 1056–57 (second emphasis added). The Ninth Circuit further noted that the MVRA is "limited . . . to enforcement of restitution orders resulting from *federal* criminal convictions." *Id.* at 1057. The restitution order against Mr. Thomas's arises from state law, not federal law, and this case does not concern any efforts by the federal government to enforce restitution. The MVRA thus provides no authority for Mr. Bostwick's and the Corporation's use of self help to garnish Mr. Thomas's benefits in satisfaction of a state law restitution order.[12]

Mr. Bostwick also selectively quotes *Novak* to suggest that the Corporation could offset Mr. Thomas's benefits against his judgment debts based on a provision of ERISA itself. Def.'s Reply at 3 ("Section 206(d)(4)(A)(i) of ERISA is not limited, as is the MVRA, to enforcement of restitution orders resulting from federal criminal convictions. It also provides retirement plans an offset right based on state court restitution orders." (quoting *Novak*, 476 F.3d at 1057)). But the section of ERISA that *Novak* cites applies only to restitution for "a crime involving such plan," 29 U.S.C. § 1056(d)(4)(A)(i), and Mr. Bostwick has provided no evidence that Mr. Thomas's criminal restitution order stems from a crime involving the Plans.[13] Congress's decision to limit

---

[12] *United States v. King*, the case that Mr. Bostwick cites as authority that the MVRA superseded *Guidry*, involved a motion by the United States for a garnishment order to satisfy restitution for a federal mail fraud conviction. *See* Def.'s Reply at 3; *see generally King*, Cr. No. 08-66-01, 2012 WL 1080297 (E.D. Pa. April 2, 2012). That case does not address whether Mr. Bostwick can employ self help to garnish benefits in satisfaction of a state restitution order.

[13] Mr. Bostwick suggests in passing that Mr. Thomas's embezzlement from the Corporation harmed the Plans by reducing the Corporation's profits available to share with employees through the Plans. Def.'s Mot. at 5–6. But Mr. Bostwick does not claim that this sort of attenuated connection falls within the scope of § 206(d)(4)(A)(i), and cites no authority that would support that conclusion. *Cf. Guidry*, 493 U.S. 373–74 (finding no exception applicable to an executive convicted of embezzlement from a union rather than from its pension funds).

12

1    that section to only certain restitution orders indicates intent for ERISA's anti-alienation provision
2    to preempt other state restitution orders—otherwise, the narrow exception for crimes against the
3    plan would be unnecessary.  Further, although *Novak* references the section 206(d)(4)(A)(i)
4    exception, the holding in that case was only "that *the government* may enforce *MVRA restitution*
5    *orders* against retirement benefits." *Novak*, 476 F.3d at 1057 (emphasis added).  As discussed
6    above, the MVRA is not applicable to the state-law restitution order at issue, and the government
7    is not seeking to enforce it.
8       A number of the cases that Mr. Bostwick cites relate to garnishment of ERISA pension
9    plans to satisfy alimony obligations.  *See* Def.'s Mot. at 5 (citing *Bowen v. Bowen*, 715 F.2d 559
10   (11th Cir. 1983) (per curiam, affirming district court without opinion); *Am. Tel. & Tel. Co. v.*
11   *Merry*, 592 F.2d 118 (2d Cir. 1979); *Cartledge v. Miller*, 457 F. Supp. 1146 (S.D.N.Y. 1978)).
12   Others relate to child support obligations. *Id.* (citing *Senco of Fla., Inc. v. Clark*, 473 F. Supp. 902
13   (M.D. Fla. 1979); *Ward v. Ward*, 164 N.J. Super. 354 (Ch. Div. 1978)).  Each of these cases arose
14   from a court order permitting garnishment of a pension plan, not from the sort of extra-judicial self
15   help that Mr. Bostwick employed here. *See, e.g.*, *Senco*, 473 F. Supp. at 904.  In this case, Mr.
16   Bostwick and the Corporation did not obtain a court order permitting garnishment of Mr.
17   Thomas's funds from the Plans, and Mr. Thomas's obligations do not relate to alimony or child
18   support.  All of the cited cases also predate Supreme Court's strict construction of ERISA's anti-
19   alienation provision in *Guidry* and *Patterson*.  Finally, Congress amended ERISA in 1984 to
20   "insure[] that the statute's antigarnishment and pre-emption provisions could not be used to block
21   the enforcement of 'qualified domestic relations orders'—generally, court orders providing for
22   child support and alimony payments by ERISA plan participants." *Mackey v. Lanier Collection*
23   *Agency & Serv., Inc.*, 486 U.S. 825, 838 (1988) (citing 29 U.S.C. § 1056(d)(3)).  In amending the
24   statute to codify the exceptions recognized in those cases, Congress did not see fit to also
25   encompass the sort of transfer that occurred in this case.
26      Mr. Bostwick cites only one decision on point[14] that allowed satisfaction of a state

---

[14] Mr. Bostwick also cites *Commonwealth v. Federico*, 383 Mass. 485 (1981).  That case held that a state law criminalizing delinquent contributions to retirement plans was preempted by ERISA,

13

restitution order from a plan governed by ERISA absent a federal statutory exception to the anti-alienation provision: *State v. Pulasty*, 259 N.J. Super. 274 (App. Div. 1992), *aff'd on other grounds*, 136 N.J. 356 (1994). The Appellate Division of the New Jersey Superior Court held ERISA's anti-alienation provision inapplicable in criminal cases. *Id.* at 283–84. The New Jersey Supreme Court, however, explicitly "d[id] not adopt the Appellate Division's distinction between the applicability of ERISA's non-alienability clause in criminal cases and its inapplicability in civil cases." 136 N.J. at 360. Instead, because the order at issue "require[d] a defendant to make restitution *after the pension funds ha[d] been paid over to the defendant*" as opposed to directly garnishing benefits or imposing a constructive trust, the state Supreme Court held that it did not implicate ERISA's anti-alienation provision or the holding of *Guidry*. *Id.* at 360–62 (emphasis added). In light of U.S. Supreme Court's reluctance to "recognize any exceptions to ERISA's antialienation provisions," *see Patterson*, 504 U.S. at 764, this Court also declines to follow the reasoning of the Appellate Division in *Pulasty*. The New Jersey Supreme Court's holding is inapplicable to the case at hand because the funds at issue were never paid to Mr. Thomas.

Having found no applicable exception to ERISA's anti-alienation requirement, the Court holds that Mr. Bostwick breached his duty as a fiduciary by transferring funds from Mr. Thomas's account directly to the Corporation, in violation of the "No Reversion" and "Inalienability" clauses of the Plans. *See* JS Ex. 2 at 91, ¶¶ 3.11.1, 3.11.7. Mr. Bostwick is therefore liable under section 409 for "the entire cost of the prohibited transaction": $21,631.79. *See Kim*, 871 F.2d at 1431; JS ¶ 10.

### D. Prejudgment Interest

"A district court may award prejudgment interest on an award of ERISA benefits at its discretion." *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007). Because the prejudgment interest that Mr. Thomas seeks does not correspond to any injury to the

---

but noted in dicta that "a State is not precluded from prosecuting, under a theft statute applicable to the entire population, an employer who steals money from an employee benefit plan, simply because the theft involved such a plan." *Id.* at 490. Here, there is no evidence that Mr. Thomas stole from a benefit plan, nor any dispute as to whether California could prosecute him for doing so. *Federico* sheds no light on the issue before the Court: whether Mr. Bostwick's transfer of funds from the Plans violated ERISA's anti-alienation provision.

Plans—even to Mr. Thomas's individual accounts within the Plans—it would not further the purposes of sections 502(a)(2) and 409. The Court therefore declines to award prejudgment interest.

The case that Mr. Thomas cites in support of his request for prejudgment interest, *Chaaban v. Criscito*, 468 Fed. App'x 156 (3d Cir. 2012), is not applicable to the facts before the Court. In *Chaaban*, trustees of an ongoing profit sharing plan filed suit against a former trustee for misconduct that included understating the value of plan assets and withdrawing funds for personal use. *Id.* at 157–59. On those facts, prejudgment interest addressed an injury to the plan, because but for the former trustee's misconduct, the funds at issue would have remained in plan accounts, accruing interest for the plan.

The same cannot be said here. Mr. Bostwick's relevant duty was twofold: (1) to abide by the anti-alienation requirement that ERISA imposed on the Plans, and (2) to disburse benefits from the Plans to Mr. Thomas at the time of liquidation. But for his breach, the benefits would have remained in Plan accounts only long enough to facilitate transfer to Mr. Thomas. There is no basis to conclude that interest would have accrued to the Plans during the period between liquidation and judgment, and prejudgment interest thus would not correspond to any "plan injury" as contemplated by *LaRue*. *See* 522 U.S. at 256 (expanding the definition of "plan injuries" to encompass individual accounts, but confirming that "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries"). Instead, any loss of interest is a consequence of the failure to properly disburse Mr. Thomas's benefits *when due*, and constitutes injury only to Mr. Thomas personally.[15] *See Russell*, 473 U.S. at 144 (finding no authority for "extracontractual damages" based on "delay in the plan administrators' processing of a disputed claim"). Thus, assuming *arguendo* that the Court retains discretion to award prejudgment interest under these circumstances, the Court finds that such an award would not further the purposes of the statutes underlying Mr. Thomas's claim. The Court also notes that Mr. Thomas embezzled funds far

---

[15] This stands in contrast to Mr. Bostwick's transfer of funds to the Corporation: as discussed above, because the funds were never distributed to Mr. Thomas, they were assets of the Plans at the time of transfer. The transfer therefore injured the Plans by wrongfully depleting its assets, and warrants a remedy under section 502(a)(2) and *LaRue*.

exceeding the value of his present claim, and that this action, although permissible under the law, arises from efforts to avoid paying his valid debts for that embezzlement. Exercising its discretion, the Court therefore declines to award prejudgment interest.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is DENIED, and Plaintiff's Motion for Judgment is GRANTED, except that Plaintiff is not entitled to pre-judgment interest. The clerk is instructed to enter judgment in favor of Mr. Thomas in the amount of $21,631.79.

**IT IS SO ORDERED.**

Dated: September 3, 2014

_____
JOSEPH C. SPERO
United States Magistrate Judge